O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| WENDY CARROLL, | Case No. 2:13-cv-4490-ODW(PJWx) |
|---|---|
| Plaintiff, | **ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [4]** |
| v. | |
| NATIONSTAR MORTGAGE, LLC; and Does 1 to 10, inclusive, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Wendy Carroll applies to the Court ex parte for a temporary restraining order enjoining Defendant Nationstar Mortgage, LLC from (1) selling the property; (2) recording the trustee's deed upon sale; and (3) evicting Carroll from the property. (ECF No. 4.)  For the reasons that follow, the Court **DENIES** Carroll's application.

## II.  FACTUAL BACKGROUND

In 2007, Carroll refinanced her home with a first trust deed loan in the amount of $997,500.  (Ex Parte Appl. 4.)  On November 2, 2010, a Notice of Default was recorded on the property.  (*Id.*)  Nationstar later acquired this loan.  (*Id.*)

Carroll alleges that since June 2012, she has tried to obtain a loan modification, evidenced by her submission of several such applications and supporting documents. (*Id.* at 5.)  She further alleges that though Nationstar confirmed receiving her loan-

modification application and the required supporting documents, Nationstar ultimately refused to modify her loan. (*Id.* at 6, 11.) Throughout the loan-modification process, Carroll complains that Nationstar gave her the run-around, including requiring her to update her application and supporting documents, informing her that it has not received the requested documents, verbally notifying her that she is ineligible for a loan modification, changing the single point of contact assigned to her, suggesting that she attempt to short-sell her home, and setting up her home for a foreclosure sale while ignoring her loan-modification application, i.e., dual tracking. (*Id.* at 5–10.)

On May 6, 2013, a Notice of Trustee's Sale was recorded. (Compl. Ex. E.) On June 3, 2013, Nationstar foreclosed the property. (Ex Parte Appl. 10.) Then Carroll received on June 10, 2013, a three-day Notice to Quit. (*Id.*) As of June 17, 2013, the trustee's deed upon sale has not yet been recorded. (*Id.*) Carroll filed her Complaint on June 20, 2013.

### III. LEGAL STANDARD

The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). Thus, a TRO may be issued only upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction). A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of succeed on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities

tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Ninth Circuit employs a "sliding scale" approach to *Winter*'s four-element test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this approach, a preliminary injunction may issue if the plaintiff raises "serious questions going to the merits" and demonstrates that "the balance of hardship tips sharply towards the plaintiff's favor," but only so long as the plaintiff also demonstrates that irreparable harm is *likely*—not just possible—and the injunction is in the public interest. *Id.* (internal quotation marks omitted).

Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Thus, a district court should enter preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

## IV.   DISCUSSION

Carroll contends she has fallen victim to dual tracking—a relatively common process by which the lender negotiates a loan modification with a borrower in default while simultaneously pressing forward with the foreclosure process. The result of this tactic "is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 904 (2013).

To combat this maneuver, and to encourage mortgage servicers to offer loan modifications, the California legislature passed the California Homeowner Bill of Rights. *See* Cal. Civ. Code § 2923.6(b). The Homeowner Bill of Rights became effective on January 1, 2013. As is relevant here, the Homeowner Bill of Rights explicitly prohibits dual tracking: "If a borrower submits a complete application for a first lien loan modification . . . [the] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent *shall not* record a notice of default or notice of sale,

or conduct a trustee's sale, while the complete first lien modification is pending." *Id.* § 2923.6(c) (emphasis added). Then, once the borrower submits the modification application, a foreclosure sale cannot occur until (1) the "mortgage servicer makes a written determination that the borrower is not eligible" for the modification and the 30-day appeal period expires; or (2) the borrower does not accept an offered modification within 14 days; or (3) the borrower accepts a modification but later defaults under the modified terms. *Id.* § 2923.6(c)–(d).

The Homeowners Bill of Rights also requires lenders to a designate a "single point of contact" for borrowers to request foreclosure alternatives and provide the borrower one or more direct means of communicating with that point of contact. *Id.* § 2923.7. Like the dual-tracking provision, the single-point-of-contact provision "is intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley*, 213 Cal. App. 4th at 904–05.

Even so, there are several problems with Carroll's ex parte request. First, the only provision she may prevail on is the one requiring a mortgage servicer to give a borrower written notice that she is ineligible for a loan modification and to allow 30 days to pass before commencing the foreclosure sale: the other two provisions do not apply here. But Carroll's allegations only superficially support her contention that she properly applied for a loan modification—there is no real evidence that she did so. And despite her claims to the contrary, correspondence from Nationstar dated June 14, 2013, suggests that Carroll failed to provide *all* required documents. (Compl. Ex. H.)

Second, there is only so much that the Court can do at this stage: the foreclosure sale has already occurred. (Ex Parte Appl. 10.) The Court could enjoin Nationstar from recording the trustee's deed upon sale and evicting Carroll from the property. But the recording is just a formality; and Carroll presents no evidence that Nationstar has taken any further steps to evict her, such as filing an unlawful-detainer complaint.

/ / /

Finally, the emergency presented here is of Carroll's own doing. A party seeking ex parte relief must establish that she "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The Notice of Trustee's Sale was recorded on May 6, 2013, and Carroll received notice of it shortly thereafter. (Compl. Ex. E.) Yet Carroll did not act by filing a Complaint then. Instead, she waited until June 20, 2013—two weeks after Nationstar's June 3, 2013 foreclosure on her property—to file her Complaint. (Ex Parte Appl. 10.)

## V. CONCLUSION

The Court concludes that the only factor in Carroll's favor is irreparable harm. Even if the Court grants this TRO, it merely delays Defendants' right to foreclosure. This ex parte application is also inappropriate because Carroll's lack of diligence created this emergency where she is now facing eviction from her home. Therefore, Carroll's Ex Parte Application is hereby **DENIED**.

Nevertheless, Carroll may file a regularly noticed motion for preliminary injunction if she believes that she is entitled to equitable relief—despite the Court's concerns expressed here—under the California Homeowner Bill of Rights.

**IT IS SO ORDERED.**

June 21, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**